May it please the Court, Trish Newman on behalf of Officer Knuth. Could you speak up a little louder, please? Yes, I'm sorry, Your Honor. Trish Newman on behalf of Officer Knuth. I would like to reserve three minutes of my time for potential rebuttal. In this case, I believe that there are two very narrow issues that are deciding. One is whether there is a properly supported material dispute of fact. And assuming, the second, assuming all of the supported facts in the non-movement's favor, whether Officer Knuth is entitled to qualified immunity. The briefing, I believe, the main contention of the responding party is that there is a dispute of fact. And we, of course, maintain that there is not. And the district court agreed in that Mr. McKibben was resisting. And our main contention is that the district court misapplied the law on qualified immunity for purposes of applying the law to the facts that the district court found, which is that Mr. McKibben was resisting. And he spun away from the officer when he was trying to detain him and tried to get away. The qualified immunity law. Let me ask you something. Is there a tribal issue of fact as to whether Mr. McKibben, when he turned, when he was in a wrist lock and he turned around, did he get free or was he still in a wrist lock held by Mr. Knuth? The facts in the record indicate that what happened was, because I had to recreate this myself just to see it in my head to picture it, was he had the wrist lock. He kept telling Mr. McKibben to put his other hand behind his back so he could handcuff him to detain him. And he would not do that. So he switched hands. He had the wrist lock in one hand, switched to the other so that he could reach back to grab his handcuffs. And that was when he spun out. So he still had one hand on him and he was still holding him. And then when he did the leg sweep maneuver, he was still holding on to his hand, I believe is what the facts say. So he still had him by one hand. It just wasn't the same wrist lock because he had switched hands. And the construction workers were 90 yards away? Well, the facts indicate that they were close by. There were actually two witnesses who say they were close by, and that was both Mr. Barnes, the supervisor, and John Fuchs, the alleged poked construction worker. They said they witnessed the event and they were close by. But Officer Knuth, he was focused on Mr. McKibben, so he actually did not see those construction workers nearby. But wouldn't we interpret the distance in the light most favorable to McKibben, and doesn't that put them farther away? I believe that there are no other facts that material supported facts that support that all of the construction workers were 90 yards away when we've got two witnesses and their depositions in the record that say that they were close by. Is there any material disputed fact that Mr. McKibben was 64 years old and weighed 135 pounds? No, there is no disputed fact as to his age or weight. Counsel, if there are disputed material facts about his conduct in the wrist lock, do we have jurisdiction? I'm sorry, who? Which person? The conduct of McKibben. The conduct of McKibben is established by his deposition, which states he doesn't remember what happened. I believe if you read his deposition testimony as opposed to his affidavit, he states he doesn't actually remember what happened. Everything happened so fast. Maybe the officer said something to him. He doesn't remember what, and then he may not have listened to what the officer said, and then everything else happened so fast until he saw stars. So the question of whether there, if there is a material disputed fact, whether the court has jurisdiction, if this court were to find that there were supported facts that Mr. McKibben did not resist arrest, then the court, even presuming facts in plaintiff's favor, still has jurisdiction to consider qualified immunity if the case law doesn't establish a clearly established right. So under Emmons, under county versus SB, versus white versus poly, all of those cases indicate there needs to be case law which puts an officer on notice that an officer is violating a clearly established law, and that indicates whether the officer is prohibited from doing what he did. So McKibben testifies that after the leg sweep, when he's on the ground, Knuth pushes his head into the ground and crushes his hand. Is there any argument that if we take that as true, that once he's already on the ground, his face is crushed and crushed his hand, that that doesn't violate clearly established law? There isn't clearly established law on that specific fact. And wouldn't it be very severe force after the person was restrained at that point when he's on the ground? I don't know. That would seem to fall under a category of totally unnecessary force, wouldn't it? I don't think that the facts support that that happened other than through his affidavit, which contradicts his deposition testimony. I believe that he's contradicted his own testimony between the affidavit and the deposition. The medical records in this case indicate that his face was the injury, the medical doctor reviewed, says that the injury was consistent with a face plant, that he fell. These injuries were consistent with falling. That includes the hand injury, where the doctor said it's consistent with a fall or with a boot. But so the medical evidence is inconclusive, and McKibben testifies, he crushed my face into the ground and stomped on my hand. So it seems like that's at least a fact dispute, right? I don't believe that, well, I don't believe Mr. McKibben has substantial evidence to support that his hand was crushed. Well, he did have a fractured finger. He did. Or maybe two fingers. I believe it was two fractures of his hand. I don't believe it was just the fingers. So where is this contradiction that you think shows that we can't take his affidavit to create a fact dispute? I believe that if the court were to credit that particular fact, that it would be taking the affidavit apart from what is contradictory and what is somewhat supported by his testimony where he felt his hand was crushed. But I don't believe that the substantial evidence supports that his hand was crushed. No one else saw that his hand was crushed. Well, who would see it? I mean, so it's a he said, he said, right? We have McKibben and Newt. Newt says I didn't. Or I'm not even sure Newt said he didn't. Where is the testimony where Newt says he didn't? I believe it's in his testimony, Your Honor. If I'm thinking about, again, I had to picture, because everything, the way it was described was he had to have him down on the ground, holding him with one hand, and Mr. McKibben had a hand on his head, and then also having a boot or foot on his hand. It doesn't physically make sense of how that would happen, how he would get handcuffs on him with both hands occupied and also a foot off to the side on his hand. He also didn't know where his hand was at the time. So Mr. McKibben's testimony doesn't make sense. It doesn't go with what he is alleging for the purpose of making this material dispute a fact. It's not supported by the substantial evidence based on his other testimony. Can you point to what testimony you say contradicts the idea that his hand was crushed once he was on the ground? The actual physical act of whether someone can have a hand on a head, a hand on wrists for purposes of trying to apply handcuffs, and then also having a foot on Mr. McKibben's hand on the ground, it's not physically possible to do that. You can't apply it. What if the record tells us that it's not physically possible or it didn't happen sequentially or something? The way that the testimony came out, Mr. McKibben has established that he hit the ground, he saw stars, then his hand was crushed. If you put that together with the testimony of what happened, where he's trying to – Officer Knuth is trying to handcuff Mr. McKibben. So you're saying that what contradicts McKibben is what Knuth says? No, what contradicts Mr. McKibben is physics.  It's almost like we believe Knuth about what exactly he was doing at that moment. I don't believe you can – it would not be in the record. It's just if you deduce from what is happening where Officer Knuth – and he does end up – Mr. McKibben does end up handcuffed and then sat up by Officer Knuth before any other officers arrived. So it's him by himself trying to control the suspect. And you're trying to apply handcuffs with one hand. It's not possible. So if you have one hand occupied with trying to hold his wrists, trying to also put handcuffs on him, his – I don't know how you have a hand on a head, a hand on hands, and then also a foot over off to the side where his hand is, and we don't know where his hand is. His hand could very well be underneath him. There's no – So you want us to hold as a matter of law it's impossible that McKibben is telling the truth that his hand was crushed? No, I believe his hand was crushed. That's supported by the medical evidence. So you want us to hold as a matter of law that it could not have happened intentionally? I am asking this Court to hold that there is no substantial evidence to support that his hand was crushed by Officer Knuth. It sounds like you're asking us to contest the facts as alleged by Mr. McKibben, which would lead to no jurisdiction. No, Your Honor. The argument we've made is that there isn't substantial evidence to support that Mr. McKibben's facts are established. The law states that – We disagree with you and think the affidavit is enough. Then where do we go? I think that there are still questions under qualified immunity, even assuming those facts, whether Officer Knuth used excessive force in this situation. Because the force would have been necessary. Why? He was attempting to detain Mr. McKibben based on being called to this site after he had accosted these construction workers. He had been giving them problems for a long time. They wanted him to leave. He kept coming by, and so the police were called. He was called out there to assess the situation and find out, detain Mr. McKibben, and find out what happened. And that's what he was trying to do. And Mr. McKibben, there isn't a dispute that he walked away from the officers, and he admitted that he may not have listened to everything the officer said. That is in his deposition. And that Officer Knuth then had to go grab him, bring him back to the car for purposes of safety, so that he could talk to him. That's what he was trying to do. He then wanted to handcuff him for his safety because he had someone who wasn't listening to him. He continued to not listen to him. So that's when he spun out. The district court found all of these facts already. Of course, this court is reviewing de novo. But the fact that he was resisting and he spun out away from the officer, he then had to take him down, try to handcuff him, and then restore order to the situation that he had been called out to. So in those circumstances, I believe that Officer Knuth is entitled to qualified immunity. There is no case law that says he can't do those things, which under Emmons you have to be able to point to case law where it shows that the actions are actually prohibited under the Fourth Amendment. What about Lalonde v. County of Riverside, which talks about not being able to use significant force that would cause injury when the person being restrained only committed minor offenses? If I'm remembering that case correctly, all of the cases determining significant force with minor offenses still is based on whether someone then resisted. If someone then resists the officers, then— So Lalonde admitted that he initially resisted. And, Your Honor, I'm sorry, but off the top of my head, I'm not remembering the facts of Lalonde. But as far as the cases which have been briefed by both Mr. McKibbin's counsel and myself in reviewing, the major theme was whether someone was resisting. And it had to be more than passive resistance, because some of the cases, the passive resistance, it was too much. Or someone jerked a head away because they were screamed at. That that wasn't considered resistance. It was more in the category of not resisting or passive resistance. And in those cases, the leg sweep, taking someone down, was considered excessive. But in the case of when someone is resisting, the case law establishes, or does not establish, whether the takedown is prohibited. Thank you very much. Thank you. Good morning. My name is Sander Dawson for the Plaintiff Appellee, Mr. McKibbin. You don't speak up, Mr. Dawson. I'm sorry? Don't mumble. Speak up. Oh, of course, Your Honor. My apologies. So this sham affidavit argument, if it wasn't clear before that this is a dispute over the facts and not the law, I think this argument really eviscerates that doubt. Now, let me ask you something. Do you dispute that Mr. McKibbin was trying to resist arrest? Yes, we do. Do you dispute that he spun around? Absolutely, yes. Oh, he claims that he was just sitting there calmly with his hand being held by Officer Knuth and the spinning around is a complete invention? Yeah. I mean, so Mr. McKibbin's testimony is this. He doesn't remember much about the incident. What he remembers is it happened real fast. Officer Knuth showed up, and next thing he knew. Let me put the question to you as precisely as I can. Does Mr. McKibbin affy or testify in his deposition, if the deposition was taken, that he did not attempt to spin around and avoid Officer Knuth's control of him? I don't believe that Mr. McKibbin was ever specifically asked that question. I think what he was asked was something, what he said, what he testified to was, I was under his control from the moment he touched me, and he testified to the fact that he didn't resist and he wouldn't resist an officer. There's nothing in his deposition that contradicts what he said in his affidavit. The fact of the matter is he just wasn't asked these specific questions, and he hasn't presented direct testimony in this case. But also the fact that he doesn't remember this incident, not only is it not surprising, because everyone agrees it did happen very fast, and it resulted in Mr. McKibbin having his face smashed in and a broken hand. I mean, it's not surprising that the details are a little murky. But we can look at some of the objective evidence in some of the other witness statements to infer that when Officer Knuth put McKibbin into a wrist lock, he wasn't resisting. According to the two construction workers who saw them after that, they said the officer had McKibbin completely under his control, didn't look like he was struggling. Based on the size, weight, strength disparity, I think a jury could certainly find, yeah, I don't think that this guy could have gotten out of a wrist lock that was placed by a much larger, stronger officer, and that he did maintain, according to Officer Knuth, throughout the entire incident. He didn't, Officer Knuth never claimed that he spun out and escaped. And also the very short duration of the encounter, and then Officer Knuth didn't list resisting arrest as one of the charges he was going to cite McKibbin for. If he spun away from Officer Knuth, that's a pretty significant fact when you are deciding after using force what to include in your report of what happened. I think that a jury could find that that would support concluding he did not spin out or otherwise resist. But at the end of the day, again, these are genuinely disputed facts, and there are several comments that I would like to go over if I have time that are supported in the record. But before we get there, even if counsels comment that all of the cases denying qualified immunity, whether it's a takedown or a substantial use of force against a person suspected of a minor nonviolent crime who didn't pose a threat, that they all involve people who weren't resisting, that's not true. In fact, one of the central cases that Officer Knuth relies on in their briefing, Schaefer, this court found that under similar facts and more challenging circumstances and a more combative suspect who was found guilty by a jury of resisting and obstructing, that the use of the leg sweep under those circumstances was excessive. The court granted qualified immunity, finding that it wasn't a clearly established violation at that point. What is your best case that you claim gave Officer Knuth notice that the use of a leg sweep under these circumstances would be excessive force? I think that Blankenhorn and Young both touch on this. I'm not hearing you. You're talking down. I apologize. I'm just pulling up a quote from Young. Could you give me the case again? Yeah. It's Young v. County of Los Angeles, 655 F. 3rd, 1156. It's 2011. And this is from Page. Does that involve a leg sweep? I don't believe that this specifically involved. It involved a takedown. It involved a? A takedown. Takedown of a suspect, of someone suspected of a minor offense. Young and Blankenhorn both do. One of them was a traffic violation. The other escapes me at the moment. But this is a quote from Young. The principle that it is unreasonable to use significant force against a suspect who was suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to have resisted arrest, was thus well established in 2001, years before the events at issue in this case. And it's discussing Blankenhorn here. Did Young involve a plaintiff who was attempting to avoid arrest? Young involved a plaintiff who was being not perfectly passive, let's say, but was not a threat. Young involved someone arrested for trespassing. And the officer asked him, you know, come here, come talk to me, you got to leave. And he was kind of like, no, leave me alone. He's thrown up his arms at certain points. Officers argued that this was threatening. He threw his license on the ground. And ultimately three officers tackled him to the ground, and the court held that that was excessive. And it explains here that it is rarely, this is at 1166 of Young. Our conclusion comports with the logical notion that it is rarely necessary, if ever, for a police officer to employ substantial force without warning against an individual who is suspected only of minor offenses, is not resisting arrest, and most important, does not pose any apparent threat to officer or public safety. But you say, and is not resisting arrest? Correct. Well, but here Mr. McKibbin doesn't recall whether he was resisting arrest. And Officer Knuth says he was trying to get away from me. Well, that's not, that's actually not accurate, Your Honor. And the first quote I read from Young states that if, the relevant factor on resisting is if someone could be found by a jury to not have resisted. But Mr. McKibbin never said, I don't remember whether I resisted. He said, essentially, no way. I mean, I know that I was under his control from the moment he touched me. It was boom, boom, face smash, hand broken. You know, I didn't try to resist him at any point. The fact that his memory of exactly whether something was said or not doesn't, it doesn't, this comes down to a credibility decision for the jury. They're going to hear from Mr. McKibbin and decide whether they think he's full of it, and they're going to hear from Officer Knuth, and they're going to decide, is it more likely than not that this guy resisted or otherwise. The other objective factor that I wanted to mention regarding the resisting, we also know based on the witness testimony that between the time Officer Knuth was talking to Mr. McKibbin by the rear driver's side wheel, and McKibbin says, okay, well, let's go talk to them then, he made it about a pace or two, he made it a couple of paces to the license plate at the back of the vehicle before he was placed in a wrist lock. Now, compare that to Schaefer. The reason that this court found in Schaefer. I'm trying to figure out whether Schaefer was decided before or after this incident. I think it was. I think after, because it's 2017, and this incident is 2015? Yes, that's correct. And I'm not suggesting that it provided notice, that Schaefer provided notice. What I'm saying is that Schaefer is an example of a case where this Court has held that a leg sweep is excessive with the suspect who is resisting. But more importantly, it's not only distinguishable on the facts, the Court's rationale for why it wasn't clearly established. I think it's actually kind of a perfect juxtaposition to this case. The Court pointed out two things in explaining, in distinguishing Young and Blankenship and other cases that were cited by the plaintiff and relied on by the District Court in denying qualified immunity. The two main factors were that it was a challenging environment and that the plaintiff, there was physical resistance. And the reason that it found that second factor is because it had to. It was constrained the facts to respect the jury's verdict, and the jury had found that Schaefer had resisted arrest or obstructed or delayed the officer. So those were the facts that the Court was dealing with. Those are not the facts of this case. Those are disputed facts in this case. So even under that, the Court found that the use of the leg sweep under those circumstances  In the case of Young and Blankenship, the court found that the use of the leg sweep under those circumstances was excessive. I'm a little confused why you're focused so much on the leg sweep, because it seems like the facts that are best for you are what happened after the leg sweep. Absolutely, Your Honor, I agree. I think that the point you raised earlier about the use of force after he's subdued and on the ground, the analysis can begin and end there. That is a gratuitous use of force, and contrary to counsel's comments, that is the only part of the encounter that Mr. McKibbin remembers very clearly and explained very clearly during his deposition. He talks about being on the ground, feeling that hand on his head, grinding his face into the ground and feeling just like anger coming off of the officer and feeling a boot or something crush his hand while he's down there. That part of the encounter, he's clear on. Can you meet your learned friend's position and explain to us how physically the officer could have done all these things? Well, I mean, I actually don't – I'm not sure that I appreciate what the confusion is. Officer Knuth explained during his deposition he had him in the wrist lock the entire time, swept his legs, maintained the wrist lock, got on top of him, and he kind of straddles him, but he's not sitting on McKibbin. And, you know, we don't know exactly how the hand was crushed, but he's got a head – or I'm sorry, he's got a hand on the back of his head pushing. He's got another on the wrist, and, you know, at some point during this, he places handcuffs on him. I don't think it's beyond the laws of physics for him to be able to pull this off. I'm not sure what would support that notion. It certainly is a matter of law. So just lastly, I will – going back to Schaefer for a second. There was no order here prior to – but how do you respond to the point made by Judge Friedland that Schaefer was decided after this case occurred? Well, I guess what – the reason I keep coming back to Schaefer is because it's kind of at the center of Appellant's brief. And it's just – it's such a – I realized in preparing for this that it seems like the perfect juxtaposition of this case because it's an example of a court applying qualified immunity to do what it's supposed to do, which is protect officers when they seem to be reasonably trying to do their job appropriately. And in that case, there was repeated verbal commands, verbal commands three or four times to this kid who wouldn't obey, said, why do I have to drop my balloons? And then he escalated that to an arm grab. He escalated that to, according to the officer, sitting him on the ground, and then he tried to run, and then from there it went to the leg sweep. Here, the whole – kind of the whole point, the heart of this case, is that there was – there was no escalation. There was no need for it to go to this level. But, you know, Officer Knuth just kind of barreled into a situation that was minor to begin with, had already resolved, he was walking home, and all of a sudden, next thing, he's in the hospital because of his approach. I think we get your point. Thank you. You wish to use a minute for rebuttal? Give a minute on the clock, please. Thank you. Just to address a couple of things that were brought up, the objective evidence from the other eyewitnesses does indicate that they saw Mr. McKibbin spin out and resist arrest. One of the witnesses, I believe it was Mr. Fuchs, was walking away, and he turned around and saw Mr. McKibbin walk away from the officer, come back, and that he was flailing his arm as Officer Knuth was walking him on the side of the car. He saw him spin out, and he saw the takedown. Max Barnes, who was the foreman, he did say that he saw the wrist lock applied to Mr. McKibbin and saw him walk back and then turned away. He did not see the takedown itself. Those are both contained in the excerpts of record for their depositions. So there is evidence to support that he did resist, he did spin out, and he was taken down by the independent witnesses on the side, aside from Mr. McKibbin's statement. Okay. Thank you very much. Thank you for the argument. And the case of McKibbin v. Knuth is submitted for decision, and that will take care of our calendar for the day, and we will adjourn until tomorrow morning at 9 o'clock. Thank you.
judges: Gould, Bea, Friedland